Ignacio ACOSTA, Virginia Bowers, Bernice Robinson, and Dovie Thurman, individually and on behalf of all other persons similarly situated, Plaintiffs,

v.

Harold O. SWANK, Director, Illinois Department of Public Aid, David Daniel, Director, Cook County Department of Public Aid, Defendants.

No. 69 C 2502.

United States District Court,
N. D. Illinois, E. D.

May 11, 1970.

Stanley A. Bass and Sheldon Roodman, Community Legal Counsel, Chicago, Ill., for plaintiffs.

William J. Scott, Atty. Gen. of the State of Illinois, Edward V. Hanrahan, State's Atty. of Cook County, Chicago, Ill., for defendants.

Before KILEY, Circuit Judge, and PERRY and NAPOLI, District Judges.

## MEMORANDUM OPINION AND ORDER

PERRY, District Judge.

This two-count civil rights suit is brought under 28 U.S.C. § 1343(3) and (4) and § 2201 as a class action by certain public welfare recipients and challenges the constitutional validity of the Illinois Department of Public Aid's "duplicate assistance" policy. Pursuant to plaintiffs' request, a three-judge court was convened to hear the case (28 U.S. C. §§ 2281, 2284).

Plaintiffs seek declaratory, injunctive and other appropriate relief as authorized by 42 U.S.C. § 1983 to secure alleged rights, privileges and immunities they claim are established by the Fifth and Fourteenth Amendments to the United States Constitution and the Social Security Act and administrative regulations thereunder. Defendants Swank and Daniel moved to dismiss.

In Count I of their Amended Complaint, plaintiffs contend the Illinois Public Aid Code, Sections 11–7 and 11–16, and certain regulations of the Illinois Department of Public Aid, which authorize the taking of deductions from welfare checks "without a prior hearing" being given recipient, violate due process of law. They ask this Court (1) to declare unconstitutional the failure of the Illinois and Cook County Departments of Public Aid to hold a "formal hearing" prior to reduction of benefits to repay previously furnished emergency disbursals for food and clothing and (2) to enjoin defendants and their agents from withholding from plaintiffs, public aid recipients, benefits retroactive to the date of "unlawful ex parte reduction".

At the time of argument before this Court, plaintiffs' counsel conceded that plaintiffs' charge of violation of the due process clause of the Constitution was not tenable and he abandoned the claim then and there in open court. It, therefore, needs no further comment since the charge is no longer an issue in this case.

In Count II, plaintiffs allege that the regulations of the Illinois Department of Public Aid which authorize deductions from welfare checks for the amount of the previously furnished emergency disbursals violate equal protection and are inconsistent with the Federal Social Security Act, 42 U.S.C. §§ 601–609, and Part IV, Section 3120, H.E.W. Handbook of Public Assistance Administration. The pertinent regulations in the Illinois Public Aid Manual are Chapter 1000, Section 1004.7, Emergency Need for Food; Section 1005.3, Need for Clothing Above the Monthly Clothing Allowance; Section 1005.3.1, Need for Clothing Occasioned by Disaster or At Time of Initial Grant; Section 1005.3.2, Need for Clothing When Clothing Allowance Has Not Been Used to Meet Clothing Needs; Chapter 1500, Section 1501.1, Duplicate Assistance.

In the prayer of Count II, plaintiffs ask this Court (1) to declare unconstitutional the Illinois Department of Public Aid "duplicate assistance" policy and regulations and (2) to enjoin the defendants and their agents from withholding past deductions and continuing to reduce the monthly benefits of public aid recipients through deductions from future welfare checks for the amount of previously furnished emergency disbursals for food, made at any time, and for clothing, made more than 90 days after the initial grant of assistance.

This action was instituted on December 4, 1969 by plaintiffs Ignacio Acosta, Virginia Bowers, Bernice Robinson and Dovie Thurman, individually and on behalf of all other persons similarly situated. Plaintiffs are recipients of public aid administered by David Daniel, Director, Cook County Department of Public Aid, as part of the public aid program under the direction of Harold O. Swank, Director, Illinois Department of Public Aid. Both David Daniel and Harold O. Swank were made defendants in their official capacities. On January 1, 1970, plaintiffs filed an Amended Complaint. Sundry motions memoranda and responsive pleadings have been filed herein by the parties and the Court has heard oral argument of counsel for the parties.

Prior to November 1968, each of the plaintiffs had been found qualified for and entitled to receive monthly disbursals of public aid under the Illinois public aid law as administered by said Director of the Cook County Department of Public Aid and each had been receiving a monthly assistance disbursal under the supervision and control of said Director of the Illinois Department of Public Aid.

Plaintiff Acosta had been a public aid recipient since November 1968 and had received $243.78 monthly up through September 1969. In that month he requested an emergency clothing disbursal. This disbursal was not one made within 90 days of his initial grant and was not one made to replace clothes damaged or destroyed by flood or fire or other disaster as provided by Section 1005.3.1. The emergency disbursal was granted because he had not used his prior budgeted allowance for clothes for that purpose, and he was then in need of clothing. However, because of a regulation of the Illinois Department of Public Aid which prohibits duplicate assistance, the amount of the emergency disbursal to Ignacio Acosta was deducted from the total amount he was to receive over the next 12 months. The deduction was not all taken from the succeeding month's disbursal but the deduction was directed by the Director of the Cook County Department of Public Aid to be distributed over a 12 month period in 12 equal installments, pursuant to the regulations of the Illinois Department of Public Aid.

In October 1969 plaintiff Acosta had the sum of $11.44 deducted from his monthly disbursal of $243.78. This $11.44 deduction has continued to be made from his $243.78 disbursal so that the net amount he has received monthly has been and continues to be $232.34 instead of $243.78.

The other plaintiffs have each been public aid recipients since prior to 1968 and each have requested and received emergency disbursals during the year 1969 for clothing or food or both. The emergencies arose not because of the loss, damage or destruction of their food or clothing by flood, fire or other disaster, in which event no deductions would have been made, but because they had not used the disbursals they received for that purpose.

Each recipient has a monthly budget determined for him or her. The budget is given to the recipient and discussed with and explained to the recipient. It allows a certain amount for food, an amount for clothing, an amount for rent, an amount for transportation and sums for other items approved for said recipient. However, recipient does not receive a disbursal check for each item but one monthly check for the total amount. It is the recipient's responsibility to spend the funds granted in accordance with his budget. Often the recipient unwisely spends these funds and finds himself and his family without funds for food and clothing.

To prevent hunger and provide shelter to recipients who have unwisely expended the assistance funds granted to them, the State of Illinois has adopted a very humane policy of granting disbursals to such recipients in the form of an advance against their future disbursals, but it requires reductions from future monthly disbursals in small amounts in order that the recipient may learn good household management without undue hardship.

As in the case of plaintiff Acosta the amount of the emergency disbursal is directed to be deducted from future monthly disbursals in 12 equal installments for emergency clothing disbursals and six equal installments for emergency food disbursals.

In Count II of their Amended Complaint plaintiffs include repetition of their claim that plaintiffs have a fixed and vested property right in their initial budgetary allowance. They again charge that the reductions in their monthly disbursals from the Illinois department of Public Aid (pursuant to the Illinois Public Aid Code as provided in Sections 11–7 and 11–16 and in the regulations of the Illinois Department of Public Aid Manual, Chapter 1000, Sections 1004.7, 1005.3, 1005.3.1, 1005.3.2 and Chapter 1500, Section 1501.1) are in conflict with the Federal Social Security Act and therefore unconstitutional. They seek to have this Court enjoin defendants and their agents from withholding past deductions and continuing to reduce the monthly benefits through deductions from further welfare checks for the amounts previously furnished as

emergency disbursals for food, made at any time, and for clothing, made more than 90 days after the initial grant of assistance. Plaintiffs by inference invoke the second paragraph of Article VI of the United States Constitution, customarily referred to as the supremacy clause.

In support of their charge plaintiffs cite and rely upon Sections 3120 and 3122 of Part IV of the Health, Education and Welfare (H.E.W.) Handbook of Public Assistance Administration as modified on January 29, 1969 and set forth in 45 C.F.R., Chapter II, Section 233.20:

(a) *Requirements for State Plans.*

A State Plan for OAA, AFDC, AB, APTD or AABD must, as specified below:

\* \* \* \* \* \*

(3) *Income and resources: OAA, AFDC, AB, APTD, AABD*

(ii) Provide that, in establishing financial eligibility and the amount of the assistance payment: \* \* \*

(*d*) current payments of assistance will not be reduced because of prior overpayments unless the recipient has income or resources currently available in the amount by which the agency proposes to reduce payment; except that where there is evidence which clearly establishes that a recipient willfully withheld information about his income or resources, such income or resources may be considered in the determination of need to reduce the amount of the assistance payment in current or future periods; \* \* \*

The State Plan must further—

(iv) Provide that, in determining the availability of income and resources, the following will not be included as income: \* \* \*

(*b*) loans and grants, such as scholarships, obtained and used under conditions that preclude their use for current living costs; \* \* \*

In Count II plaintiffs have equated the reductions in their monthly disbursals in amounts that will eventually total their emergency disbursals with the term "overpayment" as used and set forth hereinabove, Title 45, C.F.R., Chapter II, Section 233.20(a) (3) (ii) (d). By no reasonable interpretation of the foregoing H.E.W. regulation can the plaintiff be said to have received an overpayment as above described. The plaintiffs received their regular monthly disbursals but did not spend the same for food and clothing. They found themselves in desperate need. They sought an emergency disbursal and received it, not as an overpayment but as a wise administrative act. The interpretation asserted by plaintiffs is unsound. There were no overpayments to plaintiffs. There was merely a modification of payment.

Plaintiffs then argue that if the emergency disbursals were not overpayments they are loans. They then seek to have their emergency disbursals construed to be loans under the H.E.W. regulations, as hereinabove set forth. This attempt of plaintiffs to treat their emergency disbursals, which were made in advance to them in exchange for monthly deductions, as loans from third persons or outside sources is equally as unsound as their contention that they are overpayments.

■ The emergency payments received by plaintiffs were neither overpayments nor loans as the terms are used in the H.E.W. Handbook of Public Assistance Administration. The Federal regulations refer to "overpayments"— not to grants of emergency assistance. We see no conflict between the H.E.W. Handbook overpayment policy and the State's duplicate assistance policy as to present a substantial Federal question of supremacy.

■ We find no merit in plaintiffs' charge in Count II that defendants, by making monthly reductions from their monthly disbursals for repayment of emergency disbursals, have denied them equal protection under the laws of the State of Illinois and contrary to the

equal protection clause of the Fourteenth Amendment to the United States Constitution. They contend first defendant have made an invidious classification between them and other aid recipients who have not received emergency disbursals and do not have to suffer any deductions. They assert that Section 3120 of Part IV of the H.E.W. Handbook, as hereinabove set forth, provides that assistance payments must be based on need in light of currently available income and resources. They argue that since a budget has been determined for them under a monthly disbursal policy, all persons who are so situated and are equally poor must be accorded like treatment. They maintain that their future needs entitle them, as a matter of right, under the Fourteenth Amendment equal protection clause to receive their regular monthly disbursals without the reductions because of their needs, which they say have been fixed and cannot be reduced except by according them different treatment from that accorded others in their same situation. The argument is not persuasive. They are receiving exactly the same treatment in the amount of disbursals. At their own request, an emergency disbursal payment is made in advance. Monthly deductions are made but eventually they receive their full disbursal to which they have been found to be entitled, just as all other aid or assistance recipients do. The only difference between the treatment accorded to plaintiffs by defendants from that given to other persons similarly situated is that plaintiffs have been given preferred treatment over the other persons so situated who have not needed emergency allotments.

█ Second, plaintiffs argue that the regulation affording an emergency disbursal *within* 90 days of the initial grant, with no requirement for ultimate deduction, and the regulation affording an emergency clothing disbursal *after* the 90 day period, subject to future deduction from the initial allowance, sets up an invidious classification without reason therefor and results in class action or legislation and consequently is unconstitutional. The 90 day period could rationally be considered to be an informative period in which the recipient may or will take stock of his situation and rights under the Public Aid Code, and avail himself of those rights. Also after the expiration of the 90 day period, it could rationally be determined that the recipient of public aid will have become more sophisticated and aware of his rights in a given situation under the Public Aid Code.

Our conclusion that plaintiffs' 14th Amendment claim has no merit is supported by the language of the Supreme Court of the United States in its very recent opinion in Dandridge, et al. v. Williams, et al., 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491, 1969:

> In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some "reasonable basis," it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality." * * * "The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific." * * * "A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." * * *

> * * * the Fourteenth Amendment gives the federal courts no power to impose upon the States their views of wise economic or social policy.

> * * * The Constitution may impose certain procedural safeguards upon systems of welfare administration, Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287. But the Constitution does not empower this Court to second-guess state officials charged with the difficult re-

sponsibility of allocating limited public welfare funds among the myriad of potential recipients. * * *

We conclude that the complaint is vulnerable to defendants' motions to dismiss because neither Count I nor Count II states a claim upon which relief can be granted. The named plaintiffs not being entitled to relief have no standing to represent a class whom they purport to represent.

The Court is of the opinion that the relief requested by plaintiffs' Amended Complaint must be denied. The motions of defendants Harold O. Swank, Director, Illinois Department of Public Aid, and David L. Daniel, Director, Cook County Department of Public Aid, to dismiss this cause are granted and this cause is hereby dismissed.